UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LUIS A. GONZALEZ-BARRETO,

      Plaintiff,

v.                                 CASE NO. 8:18-cv-3024-T-23JSS

FLORIDA DEPARTMENT OF
CHILDREN AND FAMILIES,

      Defendant.

_____/

## ORDER

Appearing *pro se* and demanding $14 million in damages, Luis Gonzalez-Barreto sues his former employer, the Florida Department of Children and Families, for disability discrimination under the ADA and race discrimination under Title VII. Also, Gonzalez-Barreto asserts tort claims under Florida's common law. The Department, a Florida agency, moves (Doc. 37) to dismiss for failure to state a claim and asserts immunity, and Gonzalez-Barreto opposes (Doc. 42). The complaint alleges the following facts, which are presumed true in resolving the sufficiency of the complaint to state a claim.

## BACKGROUND

Although Gonzalez-Barreto declines to name his disability, Gonzalez-Barreto suffered a "back [and] neck injury" that has caused "musculoskeletal, neurological,

and digestive" dysfunction.  (Doc. 9 at ¶ 1)  In November 2014, a physician diagnosed Gonzalez-Barreto as suffering from "an emergency medical condition . . . manifesting itself by acute sufficient severity that the absence of immediate medical attention could reasonably be expected to result in serious jeopardy to patient health . . . ."  (Doc. 9 at ¶ 1)

In early 2015, one Paul Regan became the "Operations Management Consultant" at the Department and assumed supervisory authority over Gonzalez-Barreto.  (Doc. 9 at ¶ 2)  Regan began "harassing" Gonzalez-Barreto by "gruffly" instructing Gonzalez-Barreto to remain at his desk, by "forcing" Gonzalez-Barreto to use a non-ergonomic chair, and by prohibiting Gonzalez-Barreto's using a cellular telephone during meetings.  (Doc. 9 at ¶ 18)

In March 2015, Regan "removed [Gonzalez-Barreto] from telework status" but "did not remove any other ESS1 from telecommuting."  (Doc. 9 at ¶ 3)[1]  After the removal of Gonzalez-Barreto's telework status, Regan reduced Gonzalez-Barreto's score on a monthly "performance assessment," but Gonzalez-Barreto alleges that the reduced performance resulted from increased pain attendant to working in the office instead of teleworking.  (Doc. 1 at ¶ 16)

From June 2015 until March 2017, Gonzalez-Barreto weekly requested permission to telework, but Gonzalez-Barreto received no response from Regan or

---

[1] Presumably, an "ESS1" is Gonzalez-Barreto's title of employment at the Department. The amended complaint contains no allegation describing Gonzalez-Barreto's work for the Department.

from other supervisors.  (Doc. 9 at ¶ 13)  In August 2016, Gonzalez-Barreto submitted a physician's note and requested an ergonomic chair, but Regan allegedly refused the doctor's note, declined to help Gonzalez-Barreto locate the forms to request an ADA accommodation, and instructed Gonzalez-Barreto to request assistance from the human resources department.  (Doc. 9 at ¶ 19)  In December 2016, Gonzalez-Barreto asked Regan "if there is anything else [he] could do to telecommute," and Regan instructed Gonzalez-Barreto to request FMLA leave but again "failed to tell [Gonzalez-Barreto] where to find" the FMLA form.  (Doc. 9 at ¶ 21)

In February 2017, Regan reportedly refused to resolve Gonzalez-Barreto's request to telework and advised Gonzalez-Barreto to search for different employment.  (Doc. 9 at ¶ 22)  And in March 2017, Regan denied the request to telework and claimed that Gonzalez-Barreto had failed to furnish adequate medical records.  (Doc. 9 at ¶ 24)  Two weeks later, however, Gonzalez-Barreto learned that his request to telework remained pending before the human resources department. (Doc. 9 at ¶ 25)  Later that day, Gonzalez-Barreto learned from a supervisor that Regan could authorize Gonzalez-Barreto to telework "on the basis of health care" and without requiring the approval of an ADA accommodation or FMLA leave. (Doc. 9 at ¶ 26)  After learning that Regan for two years had purportedly misled Gonzalez-Barreto about the requirements to telework and had "walked [Gonzalez-Barreto] in circles," Gonzalez-Barreto "experience[d] an emotional brake-down [*sic*]"

and requested that Regan remain outside Gonzalez-Barreto's range of perception. (Doc. 9 at ¶¶ 26, 28)  During a meeting with the human resources department the following day, Gonzalez-Barreto's request to telework was approved, but the human resources department "intentionally inflict[ed] emotional distress" by permitting Regan to appear at the meeting and by gesturing toward Regan.  (Doc. 9 at ¶ 29)

From July 2017 until  March 2018, Betty Thomas, presumably a co-worker, "produce[d]" unspecified false statements and accusations against Gonzalez-Barreto. (Doc. 9 at ¶ 32)  Also, Pari Afordeh, presumably a co-worker, declared that Gonzalez-Barreto was "full of shit."  On March 13, 2018, Gonzalez-Barreto received a "Notice of Intent to Dismiss from Employment."  (Doc. 9 at ¶ 33)  Gonzalez internally appealed, but the Department issued a "Notice of Final Action — Dismissal" three days after the appeal.  (Doc. 9 at ¶¶ 34, 35)

After Gonzalez-Barreto's dismissal, the Department and other unnamed government agencies allegedly defamed Gonzalez-Barreto by disclosing unspecified "private information" to certain medical facilities and to a church attended by Gonzalez-Barreto.  (Doc. 9 at ¶ 37)  Also, Gonzalez-Barreto alleges that, in concert with unnamed affiliates of unnamed government agencies, the Department retaliated against Gonzalez-Barreto's filing a charge of discrimination by firing Gonzalez-Barreto and by directing unnamed proxies of the Department to "shoot[] guns in front of the house," to "knock[] and attempt[] to open doors" at Gonzalez-Barreto's

home, "to cause vehicle accidents," and to subject Gonzalez-Barreto to "constant surveillance." (Doc. 9 at ¶ 53)

## DISCUSSION

Gonzalez-Barreto claims that the preceding conduct by the Department constitutes race discrimination under Title VII and disability discrimination under the ADA (Count I), negligence (Count II), harassment (Count III), retaliation (Count IV), intentional infliction of emotional distress (Count V), defamation (Count VI), invasion of privacy (Count VII), and "coercing" (Count VIII). Moving to dismiss each count, the Department argues (1) that sovereign immunity bars the ADA claim and the tort claims based on disability discrimination, (2) that Gonzalez-Barreto fails to state a Title VII claim, and (3) that Gonzalez-Barreto fails to state a plausible claim under Florida law.

**1.     Immunity from the ADA claims and the state-law claims.**

Under the Eleventh Amendment, "nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. v. Garrett*, 531 U.S. 356, 363 (2001). Immunity under the Eleventh Amendment extends to a state agency, such as the Department. *Jackson v. Florida Dep't of Children & Families*, 2010 WL 11565364, at *2 (N.D. Fla. 2010). A state or state agency waives sovereign immunity only if the state "unequivocally express[es]" consent to suit in federal court. *Garrett*, 531 U.S. at 363.

Although Gonzalez-Barreto nominally sues under Title III of the ADA, which prohibits discrimination in a place of public accommodation, and alleges no facts

suggesting that the Department denied Gonzalez-Barreto's enjoying any public accommodation, a charitable construction of Gonzalez-Barreto's *pro se* complaint confirms that Gonzalez-Barreto purports to sue under Title I of the ADA, which requires an employer to accommodate reasonably a disabled employee. Although Title I of the ADA applies to state agencies, Title I of the ADA fails to abrogate a state's immunity under the Eleventh Amendment, *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 362–363 (2001), and neither Florida nor the Department has waived Eleventh Amendment immunity or consented to suit under Title I of the ADA. The Department is immune from Gonzalez-Barreto's claim under Title I of the ADA (Count I), the claim for ADA "harassment" (Count III), the claim for ADA "coercing" (Count VIII), and the claim for ADA retaliation (Count IV).[2]

Also, Gonzalez-Barreto claims negligence (Count II), defamation (Count VI), and invasion of privacy (Count VII) under Florida's common law. Although Section 768.28, Florida Statutes, waives sovereign immunity for certain tort actions, Section 768.28 has not waived Florida's immunity from suit in federal court under the Eleventh Amendment.[3] *Schopler v. Bliss*, 903 F.2d 1373, 1379 (11th Cir. 1990). That

---

[2] Gonzalez-Barreto attributes the claims for "harassment" and "coercing" to the ADA. (Doc. 9 at ¶ 1)

[3] Section 768.28(18) states, "No provision of this section, or of any other section of the Florida Statutes . . . shall be construed to waive the immunity of the state or any of its agencies from suit in federal court, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States . . . ."

is, to assert a tort claim against a Florida agency in accord with Section 768.28's waiver of sovereign immunity, the plaintiff must sue in state court and comply with Section 768.28's notice and other requirements. *Ross v. Dep't of Children and Families*, 2014 WL 12625122, at *3 (M.D. Fla. 2014) (Davis, J.) (dismissing under the Eleventh Amendment a negligence claim against the Department). Accordingly, the Eleventh Amendment bars the state-law tort claims.[4]

### 2. Gonzalez-Barreto fails to state a Title VII claim.

Claiming that the Department discriminated against Gonzalez-Barreto's Hispanic heritage, Gonzalez-Barreto relies on one allegation only: "Paul Regan selected a white female, Erin Broderick, to fill the position of Senior Economic Self-Sufficiency, although I was better qualified for the position." (Doc. 9 at ¶ 14) To state a claim based on a failure to promote, Gonzalez-Barreto must allege facts showing, among other things, that he applied for the position and that he possessed the requisite qualifications. *Sridej v. Brown*, 361 F. App'x 31, at *2 (11th Cir. 2010). Gonzalez-Barreto alleges no facts describing the qualifications for the position of

---

[4] Also, each state-law claim suffers at least one defect. The negligence claim fails because Gonzalez-Barreto identifies no common-law duty requiring an employer to accommodate an employee's disability. *White v. NCL America, Inc.*, 2006 WL 1042548, at *6 (S.D. Fla. 2006) (Seitz, J.). The claim for intentional infliction of emotional distress fails because the alleged conduct — a co-worker's calling Gonzalez-Barreto "full of shit," Regan's wrongly advising about the requirement to obtain telework status, and Regan's appearance within Gonzalez-Barreto's range of perception — is not "outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community." *Deauville Hotel Mgm't, LLC v. Ward*, 219 So. 3d 949, 955–56 (Fla. 3rd DCA 2017). The defamation claim fails because Gonzalez-Barreto identifies neither a false statement nor a publication of the false statement. Finally, Gonzalez-Barreto fails to state a claim for invasion of privacy because Gonzalez-Barreto neither describes the information disclosed nor alleges facts plausibly suggesting that a reasonable person would find the disclosure "objectionable." *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003).

"Senior Economic Self-Sufficiency," alleges no facts describing his qualifications, and alleges no facts showing that he applied for the position. Gonzalez-Barreto's assertion that he "was better qualified" is a legal conclusion, which warrants no consideration on a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## CONCLUSION

Because Eleventh Amendment immunity bars both the ADA claims and the state law claims and because Gonzalez-Barreto fails to state a plausible Title VII claim, the motion (Doc. 37) to dismiss is **GRANTED**, and the amended complaint is **DISMISSED**. No later than **JUNE 29, 2020**, Gonzalez-Barreto may amend the complaint.[5] If the amended complaint contains a discrimination claim, Gonzalez-Barreto must append to the complaint a copy of the charge filed with the EEOC. Gonzalez-Barreto's motion (Doc. 43) for clarification of an order denying Gonzalez-Barreto's second motion for reconsideration is **DENIED**.

## A CAUTION TO MR. GONZALEZ-BARRETO

Litigation in federal court is difficult and requires timely compliance with applicable rules, including the Federal Rules of Civil Procedure, the Local Rules, the Federal Rules of Evidence, and several procedural, discovery, and other orders. A judge cannot assist a party, even a *pro se* party, in conducting an action, and a plaintiff enjoys only a limited opportunity to amend the complaint. Mr. Gonzalez-

---

[5] Absent timely amendment, this dismissal order becomes the final judgment. *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 720 (11th Cir. 2020).

Barreto's management of this action strongly suggests that Mr. Gonzalez-Barreto will benefit from the advice and assistance of a lawyer.  Finally, the Department has raised immunity as a defense to Mr. Gonzalez-Barreto's claims, and sovereign immunity affords the Department immunity from suit.  The knowing maintenance of an action despite the defendant's entitlement to immunity might — on occasion — subject the plaintiff to a monetary or other sanction.  Therefore, Mr. Gonzalez-Barreto is strongly advised — before amending the complaint — to obtain legal advice and assistance from a member of The Florida Bar.

ORDERED in Tampa, Florida, on June 12, 2020.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE